**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF SOUTHERN ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | |
| **Plaintiff,** | | **CV No. 06-0366-KD-M** |
| **v.** | | |
| **$52,000.00, MORE OR LESS, IN**<br>**UNITED STATES CURRENCY,** | | |
| **Defendant.** | | |

**ORDER**

This matter is currently before the Court on a Motion for Summary Judgment filed by the Plaintiff, the United States of America, the Claimant's "Memorandum Denying the Governments [sic] Position as to Summary Judgment," the Government's Reply, and all evidentiary materials offered in support thereof. (Docs. 41, 42, 44, 47). For the reasons explained below, the Plaintiff's Motion is due to be GRANTED.

**I.      Procedural History and Factual Background**

The Government filed its Complaint for Forfeiture on June 15, 2006. (Doc. 1). The Complaint alleges that the Defendant, $52,000.00 more or less in United States Currency, is subject to forfeiture in rem pursuant to the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 802, 881(a)(6). (Doc. 1). Section 881(a)(6) provides for the forfeiture of moneys and other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of the CSA. 21 U.S.C. § 802, *et seq.*

On July 19, 2006, Claimant for Bernard Jackson ("Jackson"), purported owner of the

Defendant Currency, filed an Answer and Counter Claim. (Doc. 4). Jackson answered that the "said U.S. Currency was in no way whatsoever drug-related, to wit: it was not furnished nor intended to be furnished by any person in exchange for a controlled substance, nor was it obtained or in any way intended to be used in connection with drugs or drug activities." (Doc. 4 at 2). Claimant Jackson avers that he has "been working and saving the $52,000.00 dollars,...." (Doc. 4 at 2). The counter-claim requests that the moneys be returned to Jackson and additionally seeks "other, further and different relief to which [Jackson] may be entitled." (Doc. 4 at 3). Jackson also filed a "Verified Statement of Claim" on July 20, 2006, wherein he reasserts his answers to the Government's Complaint. (Doc. 6).

The facts as alleged in the Complaint are as follows: on March 18, 2006, Atteba Nettles ("Nettles") was at the Mobile Regional Airport when he came to the attention of airport security and the Mobile Police Department. (Doc. 1). Nettles was stopped at a security checkpoint whereupon the police determined that Nettles had three separate sealed envelopes in his jacket. (Doc. 1). Nettles was questioned and read his miranda rights. (Doc. 1). When asked what was in the envelopes, Nettles responded that the envelopes contained cash. (Doc. 1). It turns out Nettles was carrying quite a bit of cash; the three envelopes contained $20,000.00, $20,000.00, and $12,000.00, respectively. (Doc. 1). Nettles told the officers that he was traveling to New York, while employed by his cousin Bernard Jackson, to purchase various items including a vehicle, and purses and athletic shoes for resale in the Mobile, Alabama area. (Doc. 1). Nettles was traveling on a round-trip airline ticket purchased that very morning with $1,100.70 cash. (Doc. 1). According to Nettles, and the ticket, he was to return to Mobile, Alabama six days later. (Doc. 1). Despite his planned six-day trip to New York, Nettles' luggage contained no toiletries,

one pair of blue jeans, one new shirt, and one package (containing three pairs) of underwear. (Doc. 1).  Nettles responded to this apparent inconsistency by explaining that he planned to do some shopping in New York.  (Doc. 1).  In addition to the $52,000.00 found in the envelopes, Nettles had $612.00 cash in his wallet and no credit cards. (Doc. 1).  The $52,000.00 cash was seized and taken into custody by the Mobile Police Department. (Doc. 1).

On February 16, 2007, the Government filed its Motion for Summary Judgment. (Doc. 44).  The Government argues that summary judgment is appropriate here because no material issues of fact remain.  (Doc. 42).  The Government further argues that the large amount of cash is probative of drug activity; that there is a lack of evidence to support a finding that the $52,000.00 was the result of legitimate income; and that the narcotics-related criminal history of all of the individuals involved in this matter is probative to establish the connection of the Defendant currency with narcotics activity. (Doc. 42).  Jackson responds, summarily, that the Defendant $52,000.00 was not for the purchase of drugs nor proceeds from the sale of drugs. (Doc. 44).

## II.   Applicable Standard

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1]  The

---

[1]  Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall  be granted:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

-3-

party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The  party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at  317.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992), cert denied, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed. 2d 657 (1993) (internal citations and quotations omitted).  Thus, the court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The  mere existence of any factual dispute, however, will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004), cert denied, 534 U.S. 1081,

125 S.Ct. 869, 160 L.Ed.2d 825 (2005).

A.    **Civil Asset Forfeiture Reform Act**

This forfeiture proceeding was initiated after the April 2000 effective date of the Civil

Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C.A. § 983; therefore, the procedures set forth

in CAFRA apply.  The provisions of CAFRA "materially altered the various burdens of proof in

civil forfeiture actions filed in federal courts." United States v. One Parcel of Property Located at

2526 Faxon Ave., Memphis, Tennessee, 145 F.Supp.2d 942, 949 (W.D. Tenn. 2001). Under

CAFRA, the "burden of proof is on the Government to establish, by a preponderance of the

evidence, that the property is subject to forfeiture ...." 18 U.S.C. § 983(c)(1).  "The burden of

showing something by a 'preponderance of the evidence,' the most common standard in the civil

law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than

its nonexistence before [he] may find in favor of the party who has the burden to persuade the

[judge] of the fact's existence.'" United States v. Real Property in Section 9, Town 29 North,

Range 1 West, Township of Charlton, Otsego County, Michigan, 308 F.Supp.2d 791 (E.D. Mich.

2004)(citing Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

Trust for Southern California, 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)).  The

Government may use evidence gathered after the filing of a complaint for forfeiture to meet its

burden. 18 U.S.C. § 983(c)(2).

Once the Government has met its burden, the burden then shifts to the claimant to prove

by a preponderance of evidence a defense to the forfeiture or to prove that the property is not

otherwise subject to forfeiture.  18 U.S.C. § 983(d)(1); United States v. $21,000.00 in United

States Postal Money Orders, 298 F. Supp. 2d 597, 601 (E.D. Mich. 2003).

-5-

**B.     Controlled Substances Act (CSA)**

The Government's Complaint alleges that the basis of the forfeiture of the Defendant Currency is 21 U.S.C. 881(a)(6). (Doc. 1).  This provision provides, in pertinent part, for the forfeiture of: "[a]ll moneys ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... in violation of the [CSA], all proceeds traceable to such an exchange, and all moneys, ... used or intended to be used to facilitate any violation of [the CSA]." 21 U.S.C. § 881(a)(6).  When, as here, the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or that it was involved in the commission of a criminal offense, the Government shall establish by a preponderance of the evidence that there was a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3)[2].The Government need not, however, prove that the money is traceable to a *specific  transaction in illicit drugs*; it need only prove by a preponderance of the evidence that the money is *substantially connected* to drug trafficking

---

[2] Title 18 of the United States Code, Section 983(c) provides:

(c) Burden of proof.--In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property--

(1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
(2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
(3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. 983(c)(1)-(3).

generally. See <u>United States v. $118,170.00 in United States Currency</u>, 69 Fed. App'x 714, 717

n.1 (6th Cir. 2003)(unpublished opinion)).  Additionally, "[t]he government may use both

circumstantial evidence and hearsay, [to show a substantial connection between property and the

offense] and the district court should evaluate the evidence presented with a common sense view

to the realities of normal life." <u>United States v. 3402 53rd St. W. Bradenton, FL</u>, 178 Fed. App'x

946, 947 (11th Cir. 2006)(internal citations omitted).

## III.    Analysis

The Government moves this Court for Summary Judgment on the ground that no genuine

issue of material fact exists and that it is entitled to summary judgment as a matter of law.  The

Government argues that the Defendant Currency, is subject to forfeiture because it is

"substantially connected" to activities prohibited by CSA.  The Claimant responds to the

Government's Motion by asserting that "there is no legal basis for the seizure." (Doc. 44).

Claimant states that $37,000.00 of the Defendant Currency is the result of his own work and

savings.  (Doc. 44 at 4).  The remaining $15,000.00, according to the Claimant, is the proceeds

of a loan from Mr. Marty Vickery ("Vickery").

The Government, as the party moving for summary judgment, bears the initial burden of

demonstrating the absence of a genuine issue of material fact.  This summary judgment standard

dovetails with the standards set forth in CAFRA to provide that where the government meets its

initial burden to show by a preponderance of the evidence that the property subject to forfeiture

was substantially connected to drug trafficking, the burden shifts to the Claimant to demonstrate

a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture.

Where the Government has met its burden by a preponderance of the evidence, and the Claimant

fails to sustain his burden, the entry of summary judgment is proper as no genuine issue of material fact remains to preclude the entry of summary judgment.

The Government first argues that the $52,000 is subject to forfeiture because Nettle's possession of a substantial amount of cash is probative that the money was possessed in connection with drug activity. (Doc. 42). The facts here are undisputed. Nettles was carrying three envelopes containing a combined $52,000.00 on his person when he attempted to board a flight from Mobile, Alabama to New York, New York. It is also undisputed that $52,000.00 in cash is an unusually high sum of cash to carry on one's person. The Eleventh Circuit has held that, for the purposes of forfeiture actions, the possession of a large sum of currency amounts to strong evidence of illegal activity. United States v. $121,100.00 in United States Currency, 999 F.2d 1503, 1507 (11th Cir. 1993) ("Although insufficient by itself to demonstrate a connection to illegal drugs, the quantity of cash seized [may be] highly probative of a connection to some illegal activity."); see United States v. Puche-Garcia, 2000 WL 1288181, *4 (4th Cir. 2000)(unpublished opinion)(carrying "unusually large amount of cash" or "carrying cash from an unknown sender to an unknown recipient" is probative of establishing a substantial connection to drug activity).

Next, the Government argues that the lack of evidence of legitimate income to support Claimant's possession of such a large amount of cash supports forfeiture. (Doc. 42). The Government provides an analysis of Jackson's earnings versus his expenses which they argue demonstrates that he could not have legitimately earned and saved $37,000.00.[3] The

---

[3] Claimant offers testimony that he borrowed $15,000.00 of the $52,000.00 from Mr. Vickery. The remainder $37,000.00 is allegedly the result of Claimant's earnings and savings.

Government offers substantial evidence in support of its argument.  In particular, the Government has submitted a detailed analysis, with supporting documentation, of the Claimant's income and expenses dating from 1999 to 2005.[4] (Doc. 42).

According to the Government's analysis, and the evidentiary materials offered in support thereof, the Claimant suffered a $21,521.00 cash flow deficit at the end of 2001. However, the Claimant asserts that he had an estimated $8,000.00 in cash on hand as of January 1, 2002. Similarly, Claimant sustained a $29,789.00 deficit at the end of 2002, yet he claims to have had $13,000.00 cash on hand as of January 1, 2003.  At the end of 2003, Claimant sustained a deficit of $13,755.00, but again reported an increasing amount of cash on hand, $21,000.00, as of January 1, 2004.  Jackson did not file a tax return for 2004.  Based on the Government's calculations, Jackson would have had a positive cash flow of $1,100.00 at the end of 2004.

---

[4] The Government has also offered a statement from the Social Security Administration, which provides the Claimant's income in the relevant years as follows:

**Employment:**

| 1998 | $14,768.42 |
| Atlantic Marine, Inc. | |
| Mobile, AL | |

**Self Employment:**

| 2001 | $6,690.00 |
| 2002 | $10,277.00 |
| 2003 | $26,019.00 |
| 2004 | [not reported] |
| 2005 | $3,164.00 |

(Doc. 42-20 at 3).

However, Jackson reports that he had $38,000.00 on hand as of January 1, 2005.  Finally, Claimant's deficit for 2005 amounts to $19,561.00; however, he maintains that he had $67,000.00 cash on hand as of January 1, 2006.

The Claimant has not disputed the calculation of his finances proffered by the Government in its Motion for Summary Judgment, nor has the Claimant offered any argument or evidentiary materials in support of his contention that the Defendant Currency was a result of his alleged efforts at work and saving.

In civil forfeiture cases, the absence of an apparent, verifiable, or legitimate source of substantial income is probative evidence of a substantial connection to illegal activity. $22,991.00, 227 F. Supp. 2d at 1235 (citing United States v. Carrell, 252 F.3d 1193, 1201 ("evidence that claimants ... have no visible source of substantial income," is probative evidence in civil forfeiture proceeding)(citation omitted)); see also United States v. United States Currency in the Amount of $ 150,660.00, 980 F.2d 1200, 1207 (8th Cir. 1992)("The absence of any apparent verifiable, legitimate source for the [subject currency], coupled with all of the other evidence ... strongly suggests that the defendant currency was connected with drug activity."); superceded by statute on other grounds, Civil Asset Forfeiture Reform Act of 2000, 106 P.L. 185, *2,  114 Stat. 202, 205 (changing the burden of proof for civil forfeiture to the prevailing "preponderance of the evidence" standard); United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) ("Evidence that cash expenditures [by claimant] hugely exceeded any verifiable income suggests that the money was derived illegally."); United States v. $ 250,000.00 in United States Currency, 808 F.2d 895, 899 (1st Cir. 1987)("The absence of any apparent legitimate sources for the [Currency] suggests that the money is derived from drug transactions.").

-10-

Finally, the Government argues that the narcotics-related criminal history of all of the parties involved, is probative of a substantial connection of the Defendant Currency with narcotics activity.  (Doc. 42).   There are primarily three individuals involved in plaintiff's alleged attempt to start a clothing business: Nettles (who was in possession of the Defendant Currency); Jackson (Claimant who allegedly owns the Defendant Currency); and Vickery (who allegedly loaned $15,000.00 of the Defendant Currency to the Claimant).  The government has presented evidence of past illegal drug activity by each these individuals.

Nettles, who was in possession of the Defendant Currency at the time it was seized, has a series of drug related arrests dating from 1999-2005.[5]  Additionally, the Government has provided the declaration of Tawanne T. Lucas ("Lucas"), who "grew up" with Nettles in the Maysville neighborhood of Mobile, Alabama. (Doc. 42-10).  Lucas states that prior to his 2005 arrest[6] he was involved in the sale and distribution of a variety of illegal drugs.  (Doc. 42-10).  Lucas further offers that he supplied Nettles with crack cocaine and other narcotics from 2002 until as late as early 2005. (Doc. 42-10).  Nettles' criminal history has not been disputed.

Claimant Jackson offered detailed testimony of his history in the illegal drug trade.  (Doc.

---

[5] According to the documents presented by the Government, Nettles arrests include:

April 2005, Unlawful Distribution of a Controlled Substance; November 1999, Loitering for the Purpose of Drug Activity in a known drug area; October 1999, Loitering For the Purpose of Drug Activity; August 1999, Loitering For the Purpose of Drug Activity; and, March 1999, Possession of Marijuana, First Degree.

(Docs. 42 at 2; 42-4; 42-5 at 3; 42-6 at 3; 42-7 at 3; 42-8).

[6] Lucas' declaration does not list the charge for which he was arrested in 2005. (Doc. 42-11).

42-8).  Jackson was first arrested by the Mobile County Street Enforcement Narcotics Team

("MCSENT") in October of 1997, for drug-related offenses.[7]  Jackson cooperated with

MCSENT and provided detailed information to investigators regarding his associates in the drug

trade.  Jackson's cooperation with MCSENT did not, however, completely extricate him from

the drug trade.  In May of 1998, MCSENT conducted a search of his apartment and found

marijuana, cocaine, and drug paraphernalia.   By Jackson's account, he believes his participation

in the illegal drug trade came to an end in 1999 when his cooperation with MCSENT

compromised his ability to obtain and sell drugs.

The Government has offered the declaration of Tramaine Moulds, who is currently

serving a sentence in a Federal Bureau of Prisons institution following his 2001 conviction for

conspiracy to possess with intent to distribute narcotics (crack cocaine) in violation of 21 U.S.C.

§ 846. (Doc. 42-15).  Moulds states that Jackson became his "right-hand man for dealing

cocaine." (Doc. 42-15).  Moulds states that Jackson "said he quit the shipyard job because he

was making so much money selling crack." (Doc. 42-15)  Moulds states that in 1998 he supplied

Jackson with crack cocaine at the rate of about 40-45 ounces per month, with each ounce

bringing in $500.00 in profit. (Doc. 42-15).  In 1999, Moulds states that he supplied Jackson

with 8-10 ounces of powder cocaine, with an estimated profit of $1,500.00 per ounce. (Doc. 42-

15).  The Government estimates, and it is uncontested, that based on Mould's testimony,

Jackson's profit from drug sales in 1998 amounted to $20,000.00 to $22,500.00 per month. (Doc.

---

[7] The Government states that "Alacourt.com indicates that cocaine trafficking charges
from Jackson's 1997 case (97-10-993) were filed against him in September 1998 but
subsequently "no billed" by a grand jury in November 1999." (Doc. 42 at 6 n.3 (citing Doc. 42-
18)).

42 at 7).  Moulds ceased supplying Jackson with cocaine in October 2000, when he was arrested

for on the federal criminal complaint for which he is currently serving his sentence. (Doc. 42-

15).

Claimant claims that Vickery loaned $15,000 of the defendant currency to Jackson. (Doc.

42-11)  Vickery also has a drug-related criminal history.  In 1996, he was convicted of

possession of marijuana.  (Doc. 42-14).

In a civil forfeiture action, the Government bears the initial burden of establishing by a

preponderance of the evidence that the property in question is subject to forfeiture.  This

standard requires the trier of fact to believe that the existence of a fact is *more probable than its*

*nonexistence*.  "In this regard, in civil forfeiture proceedings, '[c]ourts have been cautioned not

to dissect strands of evidence as discrete and disconnected occurrences.'" $21,991.00, 227 F.

Supp. 2d at 1235-36 (citing Thomas, 913 F.2d at 1115).

The undersigned finds that the Government has met its initial burden of showing that it is

more probable than not that the Defendant Currency is substantially connected to drug

trafficking.  The Government has shown that:  Nettles' possession of such a large amount of

currency on his person is probative of drug related activity; the lack of evidence of any apparent,

legitimate, or verifiable income to support Claimant's argument that the Defendant Currency is a

result of his earnings and savings is probative of drug related activity; and finally, the drug-

related criminal history of Nettles and Jackson is probative of drug-related activity.  Though

these factors taken individually may not suffice to meet the Government's burden, considered in

the aggregate they provide sufficient evidence of a substantial connection of the Defendant

Currency to illicit activities prohibited by the CSA.  See United States v. $67,220.00 in United

States Currency, 957 F.2d 280, 284 (6th Cir. 1992)("The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden.").

Pursuant to CAFRA, the burden now shifts to the Claimant to provide a defense to the forfeiture or to prove that the property is not otherwise subject to forfeiture. In his Response, Claimant does not directly respond to the Government's three-pronged attack. (Doc. 44). Instead, Jackson summarily states that there is "no legal basis for the seizure." (Doc. 44 at 4). Jackson asserts that there was a legitimate purpose for the unusually large amount of cash carried at his behest; Nettles was to purchase a "used truck" as a surprise gift for Jackson's wife and purses and shoes for resale in Mobile, Alabama. (Doc. 44). Claimant states that the cash was not for the purchase of illegal drugs nor the proceeds of sales of illegal drugs. (Doc. 44). However, the Claimant does not support his assertions with affidavits or any other admissible evidence, nor does his Response cite this Court to any legal authority in support of his argument that summary judgment is not proper. (Doc. 44).

The only evidence of record, other than Jackson's deposition in which he generally denies that he is involved in illegal drug activity and asserts that the money was legitimately earned, is Jackson's sworn statement that Vickery loaned $15,000.00 of the Defendant Currency to Jackson in January, 2006 and a copy of an written agreement regarding the loan. (Doc. 42-11). Jackson states that he borrowed the money for "business purposes"; specifically, the money "was to be used to buy inventory for a clothing store [he] wanted to open." (Doc. 42-11). Vickery was deposed as part of this litigation and when asked about the purported loan agreement between himself and Jackson, he invoked his Fifth Amendment privilege against self-incrimination. (Doc. 42-14). Vickery again invoked the Fifth Amendment when asked if he

-14-

knew Claimant Jackson. (Doc. 42-14).

Assuming *arguendo* that the purported loan agreement between Vickrey and Jackson is valid, and the loan proceeds are not otherwise "substantially connected" to drug trafficking, the undersigned need not address the $15,000.00 separately.  Once legitimate funds are commingled with those subject to forfeiture, all of the funds become subject to forfeiture.  United States v. One Single Family Residence Located at 15603 85th Avenue North, 933 F.2d 976, 982 (11th Cir. 1991).  Thus, even if the $15,000.00 were from a legitimate source, once commingled with the $37,000.00 bearing a "substantial connection" to illicit activity, the legitimate funds become "illegitimate" and are subject to forfeiture.

Federal Rule of Civil Procedure 56(e) provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial**. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e) (emphasis added).  Additionally, the "district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998); *accord* Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989); Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1139 (7th Cir. 1984); Karlozian v. Clovis Unified School District, 2001 WL 488880 at *1 (9th Cir. 2001); see also SD ALA LR 7.2(b).  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.

1995).

The Claimant's bald assertions, absent supporting evidence, affidavits, or citation to the record before this Court or legal authority, do not give rise to a genuine issue of material fact to preclude the entry of summary judgment in favor of the Government.  As provided by the Federal Rules, Claimant may not merely rest upon his "mere allegations or denials" to defeat summary judgment; he "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  For all of the foregoing reasons, the Claimant has failed to meet his burden and summary judgment is due to be granted in favor of the Plaintiff.

**IV.    Conclusion**

Upon consideration of the evidence presented and for the reason set forth herein, the Court finds that there is no genuine issue of material fact to preclude entry of summary judgment in favor of the Plaintiff.

Accordingly, the Plaintiff's Motion for Summary Judgment (doc. 41) is **GRANTED**.

**DONE** and **ORDERED** this the 5th  day of June, 2007.


**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**